# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DAVID YARIEL RODRIGUEZ, | |
| Plaintiff, | Case No. 3:20-cv-1902 (CSH) |
| v. | **SEPTEMBER 13, 2022** |
| ROLLIN COOK, ET AL., | |
| Defendants. | |

## <u>INITIAL REVIEW ORDER</u>

**HAIGHT, Senior District Judge:**

Plaintiff David Yariel Rodriguez is a sentenced state prisoner currently confined at Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut. He has filed a civil rights complaint against Commissioners of Correction Rollin Cook and Angel Quiros; Deputy Commissioner C. Cepelak; Wardens Kenneth Butrick and Denise Walker; Deputy Wardens Jesus Guadarrama, Nunez, and Peterson; Captains James Watson and Rodriguez; Counselor Stacy Martinez; and Administrative Remedies Coordinator/Counselor Supervisor Green. Doc. 1. Plaintiff's claims arise from his placement on Chronic Discipline Status in May 2020 at Cheshire Correctional Institution ("Cheshire"). In accordance with 28 U.S.C. § 1915A, the Court now conducts its initial review of Plaintiff's complaint to determine whether the claims may proceed.

# I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2). Although detailed allegations are not required, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

2

With respect to pro se litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt pro se litigants from the minimum pleading requirements described above: A pro se plaintiff's complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the Court may not "invent factual allegations" that the plaintiff has not pleaded. *Id.*

## II. FACTUAL ALLEGATIONS[1]

Since birth, Plaintiff has suffered from learning disabilities and mental health conditions. Doc. 1 at 4, Statement of Facts ¶ 1. He attended a school that addressed his learning disabilities and a mental health provider prescribed medication to treat his mental health conditions, including post-traumatic stress disorder, attention deficit and hyperactivity disorder, impulsive control disorder, anti-social personality disorder, and bipolar disorder. *Id.*

---

[1] The facts are taken from the Complaint. Doc. 1.

3

The State of Connecticut Department of Correction website indicates that Plaintiff was most recently admitted to the Department of Correction on August 28, 2017, and that on March 20, 2019, a judge sentenced Plaintiff to six years of imprisonment. CONNECTICUT STATE DEPARTMENT OF CORRECTION, *Inmate Information*, http://www.ctinmateinfo.state.ct.us/det ailsupv.asp?id_inmt_num=417046.[2] In February 2020, prison officials transferred Plaintiff from Osborn Correctional Institution to Cheshire. Doc. 1 at 2 ¶ 2. At Cheshire, prison officials housed Plaintiff in South Block 6, a unit for inmates with security levels from 1 to 3. *Id.* at 5 ¶ 3. In March 2020, prison officials transferred Plaintiff to the T.R.U.E. program in North Block 6. *Id.* ¶ 4.

On April 20, 2020, prison officials issued three disciplinary reports to Plaintiff. *Id.* ¶¶ 5–6. On April 22, 2020, Plaintiff pleaded guilty to all three disciplinary charges. *Id.* ¶ 6. As a consequence of Plaintiff's pleas of guilty to the disciplinary charges, a prison official imposed the following sanctions and penalties: twenty-one days of punitive segregation, forfeiture of forty-five days of Risk Reduction Earned Credit, ninety days of loss of commissary privileges, sixty days of loss of recreation privileges, and thirty days of loss of social mail privileges. *Id.* ¶¶ 6–7.

On May 5, 2020, after Plaintiff had served fifteen of his twenty-one days in punitive segregation, a prison official escorted him to a hearing to determine whether to place him on Chronic Discipline Status pursuant to State of Connecticut Department of Correction Administrative Directive 9.4. *Id.* at 5–6 ¶¶ 8, 18. Plaintiff received no notice prior to the hearing and did not have time to prepare a defense or to request witnesses who might offer testimony in his favor. *Id.* at 5 ¶ 8. Counselor Martinez presided over the Chronic Discipline hearing as the hearing officer

---

[2] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694

and recommended Plaintiff for Chronic Discipline Status because of his multiple disciplinary infractions. *Id.* at 8 ¶ 20. Plaintiff did not call any witnesses to testify at the hearing. *Id.* ¶ 23.

On May 13, 2020, prison officials placed Plaintiff in the Chronic Discipline Status program. *Id.* at 7 ¶ 16. On June 10, 2020, Plaintiff attempted to commit suicide and prison officials rushed him to the University of Connecticut Health Center where medical providers pumped his stomach. *Id.* ¶ 17.

During his confinement in phase one of the Chronic Discipline Status program, Plaintiff was not permitted any "power" or a television, was restricted to one telephone call per week and to three showers per week, and was required to wear leg irons and to eat his meals in his "rust and mold filled cell." *Id.* at 9 ¶ 26. Under the loss-of-recreation penalty imposed by a prison official pursuant to Plaintiff's pleas of guilty to three disciplinary infractions, Plaintiff could not recreate outdoors for sixty days. *Id.*

During his confinement in phase two of the Chronic Disciplinary Status program, Plaintiff was permitted to recreate for one hour per day on weekdays. *Id.* ¶ 27. On weekends, Plaintiff was not permitted to shower, make telephone calls, or engage in recreational activities outside of his cell. *Id.* Plaintiff had difficulty sleeping and suffered weight loss during his confinement in the Chronic Discipline Status program. *Id.* In June 2020, he weighed 218 pounds, and by September 2020, he weighed 176 pounds. *Id.* at 10 ¶ 29.

## III. ANALYSIS

Plaintiff asserts an Eighth Amendment claim of deliberate indifference to his mental and physical health and a Fourteenth Amendment claim of violation of his right to procedural due

F.3d 161, 164 (2d Cir. 2012).

process. *Id.* at 1. He sues the defendants in their individual capacities for monetary damages and in their official capacities for declaratory and injunctive relief.

## A. Eighth Amendment—Health and Safety

Although a sentenced inmate may experience conditions that are "restrictive or even harsh," the Eighth Amendment prohibits the imposition of conditions that "involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the severity of the crime" for which an inmate is imprisoned. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citation omitted). Because "[n]o static test" exists to "determine whether conditions of confinement are cruel and unusual," courts must instead evaluate the conditions in view of "contemporary standard[s] of decency." *Id.* at 346–47.

As I recently outlined in another case, to state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. *Jordan v. Gifford*, No. 3:19-CV-1628 (CSH), 2022 WL 3106965, at *20 (D. Conn. Aug. 4, 2022). To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304; *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348. To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, that the offi-

cials knew that the inmate faced a substantial risk to his or her health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837.

### 1. Objective Prong—Isolation

Plaintiff alleges that he suffered from serious mental health conditions at the time of his placement in the Chronic Discipline Status program in mid-May 2020. He contends that the restrictive and isolating nature of the conditions during both phases of the program had a detrimental effect on his physical and mental health. The conditions in phase one of the program included a lack of access to a television, a limit of one phone call per week, and no congregate meals. Doc. 1 at 9 ¶ 26. The conditions in phase two of the program included a limit of one hour out of his cell on weekdays and no time out of his cell on weekends to shower, make phone calls, or recreate. *Id.* ¶ 27.[3] These conditions made it difficult for Plaintiff to sleep and caused him to suffer emotional anguish during both phases of the program. In addition, within one month of his placement in the program, he attempted to commit suicide, and within four months of his placement in the program, he had lost forty-two pounds. Plaintiff suggests that he was confined in the Chronic Discipline Status program from mid-May 2020 until at least September 2020 and possibly until the filing of the complaint in December 2020.

Given the nature and duration of these conditions as well as the manner in which the conditions affected Plaintiff's mental and physical health, Plaintiff has asserted sufficient facts with respect to his social isolation to meet the prong of objectively serious deprivation under the Eighth Amendment standard. *See, e.g.*, *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, "the inmate

must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to . . . mental soundness.") (internal quotation marks and citations omitted); *Baltas v. Maiga, at al.,* No. 3:20CV1177 (MPS), 2021 WL 2206966, at *9 (D. Conn. June 1, 2021) (concluding allegations that inmate was "subjected to a combination of conditions during his administrative segregation, including indefinite isolation with no opportunity for social contact and interaction, no programs, and limitations on his telephone use and visitation, raises a plausible Eighth Amendment violation") (citing *Campbell v. Maldanado*, No. 3:19-CV-1430 (SRU), 2020 WL 2558228, at *4 (D. Conn. May 19, 2020) (finding plausible Eighth Amendment claim on initial review based on allegations of ongoing confinement in near-total isolation and, *inter alia*, no contacts visits, no program opportunities, and no social interaction, and the fact that defendants were aware of his placement)).

### 2. Objective Prong—Showering

Plaintiff alleges that during his confinement in both phases of the Chronic Discipline Status program, prison officials limited his showers to three days a week: Monday, Wednesday, and Friday. Doc. 1 at 9 ¶¶ 26–27. The Eighth Amendment prohibits prison officials from depriving inmates of the necessary tools to maintain personal hygiene. *See, e.g.*, *Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation"). Plaintiff has asserted no facts indicating that the three-day-per-week limit on showers prevented him from maintaining his personal hygiene. Nor are there other facts from which it could be inferred that the limitation on showering deprived Plaintiff of any other basic human need. *See,*

---

[3] Plaintiff does not specify when phase one ended and phase two began.

*e.g., Baltas,* 2021 WL 2206966, at \*10 (Plaintiff's "allegations that he is permitted only three showers per week [in administrative segregation] does not suggest a deprivation of a basic human need.") (citing *Bernier v. Sweet*, No. 15-CV-209 (RJA) (HBS), 2018 WL 1047103, at \*3 (W.D.N.Y. Feb. 26, 2018) (normal conditions of segregation permitting only two showers per week did not constitute sufficient deprivation under Eighth Amendment)). Thus, Plaintiff has not met the objective component of the Eighth Amendment standard. The Eighth Amendment claim that Defendants permitted him to shower no more than three days a week is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 3. Objective Prong—Exposure to Mold and Rust

Plaintiff alleges that during phase one, he was confined and ate his meals in a "rust and mold filled cell." Doc. 1 at 9 ¶ 26. I and other judges in the District of Connecticut, as well as other district courts within the Second Circuit, have "found mold to pose a substantial risk of danger to a prisoner's health." *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at \*15 (D. Conn. Feb. 2, 2018) (citing *Barney v. Semple*, No. 3:17-CV-685 (AWT), 2017 WL 2380165, at \*2 (D. Conn. May 31, 2017) ("The court concludes that the alleged conditions are sufficient to support a plausible claim for unconstitutional conditions of confinement" where plaintiff alleged, *inter alia*, that he was exposed to "black and yellow mold" in the building where he was housed.); *Wade v. Chapdelaine*, 17 Civ. 350 (JAM), 2017 WL 1479417, \*2 (D. Conn. Apr. 24, 2017) ("[Prisoner] Plaintiff's complaint sufficiently alleges an objectively substantial risk of serious harm because of his exposure to friable asbestos and mold."); *Toliver v. Comm'r Semple*, 16 Civ. 1899 (SRU), 2016 WL 7115942, \*2 (D. Conn. Dec. 6, 2016) (The court "conclude[d] that the alleged conditions [were] sufficient to support a plausible claim for uncon-

stitutional conditions of confinement" where one such condition was the presence of "black and yellow mold.")); *see also Brown v. New York*, No. 20-CV-6042-FPG, 2020 WL 3630388, at *4 (W.D.N.Y. June 26, 2020) ("presence of dangerous mold and mildew in the shower may meet the objective prong") (citing *Barreto v. County of Suffolk*, 762 F. Supp. 2d 482, 493 (E.D.N.Y. 2010) ("[A]rguably, the presence of dangerous mold and mildew in his cell might meet the first prong.")).

Plaintiff does not describe the location of the mold and rust in his cell. The Court liberally construes Plaintiff's allegation that the cell was "filled" with mold and rust to suggest that both substances covered many surfaces in his cell. Although it is unclear how long Plaintiff remained in phase one of the Chronic Discipline Status program and whether he was confined in the same cell during phase two, the Court concludes that his allegation regarding exposure to mold and rust is sufficient at this stage to meet the objective prong of the Eighth Amendment standard.

### 4. Objective Prong—Leg Shackles

Plaintiff alleges that in phase one of the Chronic Discipline Status program, prison officials required him to wear leg shackles. Doc. 1 at 9 ¶ 26. It is unclear whether this requirement was enforced at all times, only when he was confined in his cell, or only when he left his cell.

An inmate's placement in restraints does not *per se* constitute a deprivation of a serious physical or mental health need or life necessity. *See, e.g.*, *Caballero v. Lantz*, No. 3:05-CV-140 CFD, 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008) ("The use of in-cell restraints in prisons is not prohibited by the Eighth Amendment and is certainly justified under many circumstances."). However, handcuffs or leg shackles that expose an inmate to a risk of substantial physical injury

or needless pain, suffering, or humiliation may constitute a condition that meets the objective prong of the Eighth Amendment standard. *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (placement in handcuffs attached to a hitching post "subjected [inmate] to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a seven-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation"); *Caballero*, 2008 WL 638397, at *3 ("Caballero's allegation that he was placed in in-cell restraints in a manner that forced him to defecate on himself, and prevented him from cleaning himself for a period of nine hours, if true, may be sufficiently serious to support a claim that Caballero's Eighth Amendment rights were violated.").

Plaintiff does not indicate that the requirement that he wear leg shackles caused him pain or otherwise deprived him of a basic human need, in contrast to the allegations of the plaintiffs in *Hope* and *Caballero*, cited above. As such, the allegation that he was required to wear leg shackles during the first phase of the Chronic Discipline Status program does not meet the objective component of the Eighth Amendment standard. This Eighth Amendment claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 5. Subjective Prong—Isolation and Mold Exposure

Plaintiff alleges that he filed inmate requests and grievances to inform all Defendants of his placement on Chronic Discipline Status, the nature of the excessively restrictive conditions of confinement in the Chronic Discipline Status program, and the effect of those conditions on his mental and physical health, but Defendants failed to take steps to address the conditions or remove him from the program. These allegations are sufficient, at this early stage, to meet the sub-

11

jective component of the Eighth Amendment standard. Plaintiff's claims under the Eighth Amendment that all Defendants, in their individual and official capacities, were deliberately indifferent to his physical and mental health by subjecting him to isolating conditions and exposing him to mold and rust during his confinement in the Chronic Discipline Status program will proceed.

### B. Fourteenth Amendment—Procedural Due Process

Plaintiff challenges the decision by Hearing Officer/Counselor Martinez and Hearing Supervisor/Captain Rodriguez to place him in the Chronic Discipline Status program after a hearing held on May 5, 2020.[4] He contends that he did not receive notice of the hearing and was unable to prepare a defense or identify witnesses to call at the hearing.

The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). "Liberty interests

---

[4] Although Plaintiff also refers to the three disciplinary reports he received in April 2020 and the sanctions and penalties that a prison official imposed pursuant to his pleas of guilty to those disciplinary reports in April 2020, Plaintiff asserts no facts to state a claim that any prison official denied him due process in connection with the issuance or disposition of these disciplinary reports. Thus, the Court does not construe these allegations to raise a procedural due process claim. Furthermore, Plaintiff waived any procedural due process challenge regarding all three disciplinary charges by freely choosing to plead guilty to them. *See e.g.*, *Trimmier v. Cook*, No. 3:20CV396 (KAD), 2020 WL 5231300, at *3 (D. Conn. Sept. 2, 2020) (observing that inmate could not "state plausible 14th Amendment procedural due process claim arising out of" his placement in the Security Risk Group (SRG) program following disposition of disciplinary report for SRG affiliation "because [inmate] pled guilty to the SRG disciplinary charge") (citing *Coleman v. Sutton*, 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (plaintiff's plea of "guilty to the charged [sic] in the misbehavior report filed against him by Nurse Welburn . . . defeats any claim based on the issuance of the report"); *Reid v. Doe*, No. 95-CV-1144, 1997 WL 216226, at *5 (N.D.N.Y. Apr. 15, 1997)) (since plaintiff pleaded guilty to harassment charge in misbehavior report, there could be no constitutional violation arising out of issuance of report, even if report was motivated in part by retaliation)).

protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court reexamined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." *Id.* at 474. The Court explained that in the prison setting, liberty interests protected by Due Process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court held that Conner's confinement in segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. Thus, an inmate has a protected liberty interest only if the disciplinary sanctions caused him to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of prison life." *Id.*

With *Sandin*'s guidance in mind, I have previously addressed whether prisoners have alleged a cognizable deprivation of "liberty"—that is, whether they have plausibly alleged that they experienced an "atypical and significant hardship." Toward one end of the spectrum, I explained that:

> [A] twenty-day confinement in segregation, falling well short of thirty days, does not, in and of itself, constitute a sufficient deprivation of liberty subject to due process protection. This twenty-day restriction imposes no "atypical and significant hardship" in relation to the fifty-one (51) year term of imprisonment to which [the plaintiff] was sentenced for attempted murder, assault, and criminal possession of a firearm.

*Abrams*, 2018 WL 691717, at *12. *See also Shand v. Parsons*, No. 3:20-CV-28 (CSH), 2022 WL 2981593, at *5–6 (D. Conn. July 28, 2022).

13

On the other hand, where a plaintiff alleged that he was placed in administrative segregation for a much longer period of time, I held in an initial review order that:

> Plaintiff's Complaint shows that he was committed to Administrative Segregation for more than 101 days. "Such a period of segregated confinement would ordinarily preclude dismissing a claim without fact-finding." [*Ellerbe v. Jason*, No. 12 Civ. 580 (MPS), 2015 WL 1064739, at \*5 (D. Conn. Mar. 11, 2015).] Plaintiff may therefore meet the first *Sandin* requirement of a deprivation of a liberty interest imposing an atypical and significant hardship; and, further factfinding is needed.

*Campbell v. Lantz*, No. 19 Civ. 1512 (CSH), 2019 WL 6771417, at \*8 (D. Conn. Dec. 12, 2019) (modification in *Campbell*).

Conditions of a prisoner's housing may independently give rise to an inference of atypicality, even if the time spent in that housing does not. *Shand*, 2022 WL 2981593, at \*6. The Second Circuit has "affirmed dismissal of due process claims only in cases where the period of time spent in [restrictive housing] was exceedingly short—less that the 30 days that the *Sandin* plaintiff spent in [restrictive housing]—*and* there was no indication that the plaintiff endured unusual [restrictive housing] conditions." *Palmer*, 364 F.3d at 65–66 (citing cases) (emphasis added). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (internal quotations and citation omitted).

Plaintiff alleges that after a hearing held on May 5, 2020, Hearing Officer/Counselor Martinez and Hearing Supervisor/Captain Rodriguez placed him on Chronic Discipline Status. On May 13, 2020, prison officials placed him in the Chronic Discipline Status program, and he remained in the program until September 2020 and possibly until December 2020. During his

confinement in the first phase of the program, prison officials limited his access to showers and telephone calls, denied him access to a television and congregate meals, and required him to wear leg shackles. Although Plaintiff alleges that he could not engage in recreation outside for sixty days, this condition was the result of a penalty imposed for his plea of guilty to three disciplinary infractions in April 2020. In the second phase, prison officials subjected Plaintiff to confinement in his cell for twenty-three hours per day on weekdays and twenty-four hours per day on weekends. Given the restrictive conditions to which Plaintiff was exposed for at least 111 days, and perhaps as many as 232 days, during his participation in the Chronic Discipline Status program, the Court concludes at this stage that Plaintiff has plausibly alleged that he had a liberty interest in not being placed in the Chronic Discipline Status program.

Given the existence of a liberty interest, the Court must next consider whether Plaintiff was afforded due process in the deprivation of his liberty interest. *Cf. Shand*, 2022 WL 2981593, at *7. In evaluating the process accorded in prison disciplinary and administrative decisions, the Court is mindful of "the deference we owe prison officials in carrying out their daily tasks." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979)).

The procedural protections required under Fourteenth Amendment due process depend upon the context of the proceeding. *See Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). In an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). In a disciplinary proceeding, as the Supreme Court held in *Wolff v. McDonnell*, 418 U.S. 539, 566 (1973), an inmate

charged with a disciplinary violation that may result in the loss of good-time credits is entitled to written notice of the charges at least twenty-four hours in advance of the hearing, the opportunity to present witnesses and documentary evidence before an impartial hearing officer or committee as long as doing so will not jeopardize prison safety and security, and a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action. *Id.* at 564–66. The finding of guilt as to the disciplinary charge must be based on some "reliable evidence." *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (internal quotation marks and citations omitted).

It is not clear from Department of Correction Administrative Directive 9.4 whether the Chronic Discipline Status program is disciplinary or administrative. Chronic Discipline is described as: "A restrictive housing status that results in management of an inmate whose behavior, while incarcerated, poses a threat to the security and orderly operation of the facility, or a risk to the safety of staff or other inmates due to repetitive disciplinary infractions." Administrative Directive 9.4(3)(H).[5]

Plaintiff alleges that he received no notice of the hearing or the basis of the hearing to determine whether to place him on Chronic Discipline Status and that he could not prepare a defense or determine what witnesses could offer oral testimony or a written statement in his defense. He participated in the hearing but could not call any witnesses in his defense. He also suggests that insufficient evidence existed to support the determination by Chronic Disciplinary Status Hearing Officer Martinez and Chronic Disciplinary Status Hearing Supervisor Rodriguez that

---

[5] The current version of Administrative Directive 9.4, in effect since June 16, 2016, may be found on the Department of Correction website at: https://portal.ct.gov/DOC/AD/AD-Chapter-9. The Court takes notice of this directive pursuant to *Giraldo*, 694 F.3d at 164.

he be placed on Chronic Discipline Status.

The Court concludes that Plaintiff has stated a plausible procedural due process claim under either the standard in *Hewitt* or the standard in *Wolff*. The Court will permit the Fourteenth Amendment procedural due process claim to proceed against Defendants Martinez and Rodriguez in their individual and official capacities.

### C. Claims for Relief

In his request for relief, Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages from Defendants in their individual capacities. Doc. 1 at 11 ¶¶ 1–5.

#### 1. Declaratory Relief

Plaintiff seeks a declaratory judgment that Defendants violated his Eighth and Fourteenth Amendment rights.[6] However, a declaratory judgment that Plaintiff's rights were violated in the past is barred by the Eleventh Amendment. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.") (citations omitted).[7] Accordingly, the request for a declaratory judgment is dismissed as outside the Court's jurisdiction.

---

[6] In his request for declaratory relief, Plaintiff also seeks "recording of all D.O.C. Summ[a]ry, DR process." Doc. 1 at 11 ¶ 1. The Court interprets this as a request for injunctive relief in the form of requiring the DOC to provide recordings of its disciplinary or administrative hearings to Plaintiff.

[7] Furthermore, were Plaintiff to prevail on his constitutional claims, the Court necessarily would determine that his rights had been violated. Thus, a separate award of declaratory relief is unnecessary.

*2. Injunctive Relief*

Plaintiff seeks an injunction ordering Defendants "to take Plaintiff's issue stated herein off computers and all master files and restore all [privileges lost] due to the placement on Chronic Discipline." Doc. 1 at 11 ¶ 2. The Court interprets this to include a request to expunge the three disciplinary reports—to which Plaintiff pleaded guilty—from April 2020 and any disciplinary records dating from his May 2020 hearing. Because the Court concludes that Plaintiff fails to state a claim with respect to the April 2020 reports, it will focus on the results of the May 2020 hearing. The Court will also consider the request for recordings of disciplinary or administrative hearings included in Plaintiff's self-styled request for declaratory relief.

In *Ex parte Young*, 209 U.S. 123, 155–56 (1908), the Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *See also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) ("[S]overeign immunity d[oes] not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them immunity from responsibility to the supreme authority of the United States.") (citation and internal quotation marks omitted); *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law.")

The events described in the Complaint took place at Cheshire and Osborn Correctional Institutions and Plaintiff's Due Process claims are against Defendants Captain Rodriguez and

Counselor/Hearing Officer Martinez, both of whom are officials at Cheshire. Doc. 1 at 2, 3 ¶ 10, 4 ¶ 12. On July 1, 2022, Plaintiff was transferred to Corrigan-Radgowski Correctional Center to finish the remainder of his sentence. *See* Notice of Change of Address, Doc. 13 at 1 ¶ 1; Notice of Change of Address, Doc. 9 at 1 ¶ 1. "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). "However, there is an exception to the mootness doctrine for challenged actions that are 'capable of repetition, yet evading review.'" *Pugh v. Goord*, 571 F. Supp. 2d 477, 488 (S.D.N.Y. 2008) (citation omitted). "This exception will be applied . . . if '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.' " *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). Plaintiff has not alleged facts to satisfy this exception as the Court has no grounds to infer that he will be subjected to the same action again. Accordingly, the request for injunctive relief must be dismissed as not plausible.

### 3. Monetary Damages

Any claims for monetary damages against Defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). "That is so because a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ." *Id.* (citation and internal quotation marks omitted). Accordingly, to the extent that Plaintiff asserts claims for monetary damages against Defendants in their official capacities, the claims will be dismissed as outside the Court's jurisdiction.

19

### IV. CONCLUSION AND ORDERS

For the foregoing reasons, the Court enters the following orders:

**(1)**     The Eighth Amendment claims that Defendants Cook, Quiros, Cepelak, Butrick, Guadarrama, Walker, Nunez, Peterson, Watson, Rodriguez, Martinez, and Green restricted Plaintiff to three showers per week and required him to wear leg shackles during his confinement in the first phase of the Chronic Discipline Status program are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Eighth Amendment claims that Defendants Cook, Quiros, Cepelak, Butrick, Guadarrama, Walker, Nunez, Peterson, Watson, Rodriguez, Martinez, and Green, in their individual capacities, subjected Plaintiff to exposure to mold and rust during his confinement in the first phase of the Chronic Discipline Status program and to isolating conditions in both phases of the Chronic Discipline Status program and the Fourteenth Amendment claim that Defendants Martinez and Rodriguez, in their individual capacities, violated Plaintiff's right to procedural due process in connection with his placement in the Chronic Discipline Status program will proceed insofar as they seek monetary damages against Defendants in their individual capacities. Plaintiff's requests for declaratory and injunctive relief are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

**(2)**     Within **twenty-one (21) days** of this Order, the Clerk shall verify the current work addresses of: Former Commissioner of Correction Rollin Cook; Commissioner of Correction Angel Quiros; Deputy Commissioner C. Cepelak; Former Warden Kenneth Butrick; Former Deputy Warden Jesus Guadarrama, now Warden at Osborn Correctional Institution; Warden Denise Walker; Deputy Warden Nunez; Deputy Warden Peterson; Captain James Watson; Captain Rodriguez; Counselor Stacy Martinez; and Administrative Remedies Coordinator/ Counse-

20

lor Supervisor Green and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the **thirty-fifth (35th) day** after mailing, the Clerk shall report to the Court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendants Cook, Quiros, Cepelak, Butrick, Guadarrama, Walker, Nunez, Peterson, Watson, Rodriguez, Martinez, and Green shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(5)     All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(6)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than

one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

**(7)**     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on the defendant's attorney by regular mail.

**(8)**     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(10)**     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

It is SO ORDERED.

Dated: New Haven, Connecticut
September 13, 2022

/s/ *Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

23